IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donald Ray Hulon, #247542, ) | C/A No. 0:13-2861-DCN-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Perry Powell; Willie Eagleton; Mrs. Rorie, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The plaintiff, Donald Ray Hulon ("Plaintiff"), a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. Plaintiff is an inmate at Evans Correctional Institution ("Evans"), a facility of the South Carolina Department of Corrections ("SCDC"), and files this action *in forma pauperis* under 28 U.S.C. § 1915. The Complaint, which requests monetary damages for an alleged violation of Plaintiff's due process rights, names SCDC employees as defendants (collectively, "Defendants"). Having reviewed the Complaint in accordance with applicable law, the court concludes that it should be summarily dismissed for failure to state a claim upon which relief may be granted.

**I.     Factual and Procedural Background**

Plaintiff claims that he was "written up" for threatening an officer (Defendant Rorie), and was then verbally abused by Rorie and Defendant Powell. (ECF No. 1 at 3-4.) He was found guilty at a disciplinary hearing, and was sentenced to "lock-up" and denied privileges. (Id. at 4.) After returning to the dorm from lock-up, Rorie again wrote up Plaintiff on false charges, which were subsequently dropped. Plaintiff clams that his life was threatened and nothing was done. Plaintiff asks this court to order that Rorie be banned from working at Evans and that he be allowed to

recover monetary damages for his pain and suffering and emotional distress. (Id. at 5.) He also asks that the court order Defendant Eagleton, the warden at Evans, and the Evans staff to take a class on verbal harassment. Plaintiff additionally asks for damages for the time he spent in lock-up and for restoration of his privileges and job.

**II.     Discussion**

    **A.     Standard of Review**

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). This review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324–25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Md. House of Corr., 64 F.3d 951 (4th Cir. 1995) (*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted," "is frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief."[1]  28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez,

---

[1] Screening pursuant to § 1915A is subject to this standard as well.



504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. Neitzke, 490 U.S. 319; Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995).

This court is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.     Analysis**

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." Rehberg v. Paulk, 132 S. Ct. 1497, 1501 (2012). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

**1.     Exhaustion of Administrative Remedies**

The Complaint is subject to summary dismissal as Plaintiff clearly has failed to exhaust his administrative remedies. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need



to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "'using all steps that the agency holds out, and doing so *properly*.'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The plaintiff's failure to exhaust administrative remedies is considered an affirmative defense, and not a jurisdictional infirmity. Id. at 216. However, if the lack of exhaustion is apparent on the face of the prisoner's complaint, *sua sponte* dismissal prior to service of the complaint is appropriate. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC") is generally part of the available administrative remedies an inmate must exhaust. See Furtick v. S.C. Dep't of Corrs., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the [ALC] has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corrs., 605 S.E.2d 506 (S.C. 2004)); but see Howard v. S.C. Dep't of Corrs., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation



or statute but may rule on as-applied challenges); Howard, 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).

The face of the Complaint shows that Plaintiff did not properly exhaust his available administrative remedies. Although he attaches to his Complaint three "Step 1" grievance forms (see ECF 1-1 at 3-5), there is no indication that Plaintiff completed exhaustion of these grievances. Accordingly, the court cannot proceed with his claims.

### 2. Atypical Deprivation

Additionally, as to Plaintiff's wish to recover damages for being confined to "lock-up," in order to prevail on a due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 486 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). "[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); see also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). "An inmate has no liberty interest in remaining in the general prison population because administrative segregation is 'the sort of confinement that inmates should reasonably anticipate

receiving at some point in their incarceration.'" Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).[2]

### 3.     Right to Damages

Moreover, to recover damages under 42 U.S.C. § 1983 based on an allegedly unconstitutional imprisonment, a plaintiff must show that the legality of the imprisonment has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). A claim for damages based upon an allegedly illegal term of imprisonment that has not been so invalidated is not cognizable under § 1983. Id.

As the Supreme Court has stated,

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). This rule applies to prison disciplinary convictions as well. Edwards v. Balisok, 520 U.S. 641, 646 (1997). Because the Complaint shows that Plaintiff's disciplinary conviction has not been overturned or invalidated, no civil rights claim for damages based on its illegality has yet accrued. Id. Moreover, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, Plaintiff is barred from seeking to recover for his claims of emotional distress.

---

[2] Hewitt was abrogated on other grounds by Sandin.



4.   **Verbal Abuse**

As to Plaintiff's claims that the defendants threatened or otherwise verbally abused him, verbal threats or abusive language toward him do not state a constitutional claim. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (stating that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (stating that verbal threats causing fear for a plaintiff's life is not an infringement of a constitutional right); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (*per curiam*) ("Verbal harassment or abuse of the sort alleged in this case [*i.e.*, the sheriff refusing to mail certain legal correspondence for a prisoner and threatening to hang him] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983") (citing Collins, 603 F.2d at 827); cf. Hudspeth v. Figgins, 584 F.2d 1345 (4th Cir. 1978) (holding that allegations that a guard threatened to have an inmate killed because he had a suit pending combined with the carrying out of a threat to have the prisoner transferred from unsupervised work detail to supervised work detail was sufficient to state a claim under § 1983).  Thus, Plaintiff has provided the court with no basis upon which to grant his requested relief.

5.   **Prison Employment**

This court cannot order that Plaintiff be returned to his former prison job.  Section 1983 prohibits the deprivation of any rights guaranteed by the Constitution or law by any person acting under color of state law. Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982).  There is, however, no authority supporting any claim that a prisoner has a constitutional right to any job.  See, e.g., Mitchell v. Kirk, 20 F.3d 936, 938 (8th Cir. 1994) (finding that prisoner plaintiff had "no



constitutional right to a particular prison job"); Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991) (recognizing that the prisoner-plaintiff had "no right to a job in the prison or to any particular job assignment"); Garza v. Miller, 688 F.2d 480, 485 (7th Cir. 1982) (holding that the prisoner-plaintiff did not "have a property or liberty interest in prison employment"); cf. Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986) (holding that "job assignment and reassignment remain the prerogative of the prison administrators"). Accordingly, because Plaintiff has not asserted that the defendants deprived him of a right guaranteed under the Constitution or laws of the United States, he has failed to state a claim upon which relief can be granted.

### 6. Employment of Prison Employees

With regard to Plaintiff's request that Rorie not be allowed to work at Evans, the court refers to the United States Court of Appeals for the Fourth Circuit's discussion in Hite v. Leeke, 564 F.2d 670 (4th Cir. 1977):

> In Meachum v. Fano [427 U.S. 215, 229 (1976)], the Supreme Court bluntly declared that "federal courts do not sit to supervise state prisons." This expression of cautious restraint in dealing with "the day-to-day functioning of state prisons" and the "discretionary decisions" of their administrators is said to be rooted in judicial concern for "federalism, the separation of powers, and deference to the expertise of state administrators." But, despite such concerns, such "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution," and the decisions in which jurisdiction of such claims has been exercised are many.

Id. at 671-72 (footnotes omitted). As Plaintiff has failed to set forth any constitutional violations by the defendants, this court should not make employment decisions at the subject facility.

### 7. Supervisory Liability

The Complaint should be summarily dismissed as to Defendant Eagleton because Plaintiff has failed to allege any facts showing personal involvement by this defendant in connection with any alleged constitutional violation. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). The law is

Page 9 of 12



clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates). Accordingly, Plaintiff's claims against Defendant Eagleton fail as a matter of law.

        **8.**     **State Law Claims**

Because Plaintiff's federal claims are recommended for summary dismissal, the district court should decline to exercise supplemental jurisdiction over any state law causes of action raised by Plaintiff. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726

(1996); <u>Tigrett v. Rector & Visitors of the Univ. of Va.</u>, 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).

### III.     Conclusion and Recommendation

Accordingly, the court recommends that the Complaint be dismissed without prejudice and without issuance and service of process.

                                                                                     _____
                                                                                     Paige J. Gossett
                                                                                     UNITED STATES MAGISTRATE JUDGE

December 18, 2013
Columbia, South Carolina

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).